RECEIVED
AUG 29 2013
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| NATIONAL WASTEWATER SYSTEMS, INC. | : | DOCKET NO. 2:13-0527 |
| VS. | : | JUDGE TRIMBLE |
| MCKITTRICK PRECAST, INC. | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the court is a "Motion to Dismiss Pursuant to Rule 12(b)(6) Filed on Behalf of McKittrick Precast, Inc." (R. #5) wherein defendant, McKittrick Precast, Inc. ("MPI") moves to dismiss with prejudice the instant Application to Confirm Arbitration Award filed by plaintiff, National Wastewater Systems, Inc. ("NWS") based upon its failure to state a claim for which relief may be granted.

### FACTUAL ALLEGATIONS

In this lawsuit, plaintiff is seeking confirmation of an arbitration award in its favor and against MPI pursuant to 9 U.S.C. § 9 of the Federal Arbitration Act. On or about February 18, 2002 NWS and MPI entered into a five (5) year manufacturing contract wherein NWS granted MPI, as manufacturer, certain exclusive territory (Oklahoma) to manufacture[1] and install products and systems; NWS also agreed to sell MPI certain products.[2] The contract obligated MPI to pay for the

---

[1] NWS provided MPI with four molds which were trade secrets to be used to manufacture the proprietary product of NWS. R. #1-1, p. 8.

[2] R. #1-1, Manufacturing contract.

products within 30 days.[3] Paragraph 7 of the contract provided the following pertinent arbitration clause:

> Arbitration. Any and all claims, disputes or disagreements between the parties must be arbitrated in Lake Charles, Louisiana, in accordance with the expedited Commercial Rules of the American Arbitration Association. The arbitration may award attorney's fees to the successful party.

The contract also contains a provision that states that it is governed by Louisiana law. Paragraph 11 of the contract provides that after the termination or dissolution of the contract, the manufacturer (MPI) would continue "to abide by sections 5(iv), 5(vi), 5(ix), 6(1), 6(ii), (6v) and 7.

After the contract expired, MPI continued to manufacture and market products based on NWS' design but allegedly without NWS' permission or consent. Because MPI failed to pay for a number of the products it purchased from NWS, an open account was created which accrued to $269,095.24. On February 17, 2012, NWS made written demand on the outstanding balance. MPI received a copy of the demand letter on February 23, 2012. MPI failed to pay NWS, thus, NWS filed a Demand for Arbitration and a Statement of Claim with the American Arbitration Association ("AAA") praying for an award of $269,095.24 with legal interest, costs and attorney's fees. NWS also sought to enjoin MPI from marketing and selling its intellectual property. MPI received a copy of the demand on April 2, 2012. MPI did not answer the demand.

On April 30, 2012, MPI received notice from AAA of the case assignment and pertinent deadlines. The matter was set for hearing on October 18, 2012 in Lake Charles, Louisiana. Notice was provided to MPI. Due to a health emergency of the arbitrator, the hearing was rescheduled for November 14, 2012 and MPI was again provided notice of the new hearing date. The hearing was

---

[3] Id.

held on November 14, 2012; MPI failed to appear. After presenting the appropriate documentation to prove its damages, the arbitrator awarded NWS $269,095.24, plus judicial interest from the date of the award, costs and attorney's fees. Both the AAA and NWS sent MPI a copy of the award. The arbitrator also granted NWS' injunctive relief and ordered MPI to pay the award no later than December 31, 2012.[4] The purpose of the instant lawsuit is to confirm the arbitrator's award and enter judgment against MPI and in favor of NWS.

## RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "[5] Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged.[6] The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true.[7] In other words, a motion to dismiss an action for failure to state a claim "admits the

---

[4] R. #1-1, exhibit I.

[5] Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977)(per curiam) citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957)).

[6] Elliot v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989).

[7] Oppenheimer v. Prudential Securities, Inc., 94 F.3d 189, 194 (5th Cir. 1996).

3

facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts.[8] "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . ."[9] "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[10] "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."[11]

Under Rule 8 of the Federal Rules of civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it demands "more than an unadorned, the defendant-unlawfully-harmed-me accusation."[12] A complaint that offers "labels and conclusions:" or "a formulaic recitation of the elements of a cause of action will not do."[13] Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."[14]

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[15]

---

[8] Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1137 (5th Cir. 1992).

[9] Guidry v. Bank of LaPlace, 954 F.2d 278, 281 (5th Cir. 1992).

[10] Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

[11] Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995).

[12] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).

[13] Id.

[14] Id., at 557, 127 S.Ct. 1955.

[15] Id., at 570, 127 S.Ct. 1955.

## LAW AND ANALYSIS

MPI has filed the instant motion to dismiss claiming that because the transactions that give rise to the subject of this matter occurred after the contract between the parties ended, the provision mandating arbitration had no effect, consequently making the arbitrator's award completely null and/or unenforceable because of lack of jurisdiction. In other words, MPI claims that it did not agree to arbitrate the disputes that were the subject matter of the Arbitration Award.

NWS maintains that the motion to dismiss should be denied because MPI cannot challenge the arbitrator's authority at this stage of the proceeding. NWS argues that a defendant may only challenge the confirmation of an arbitrator's award based upon four (4) narrow grounds specified in section 10 of the Federal Arbitration Act (FAA).[16] Alternatively, NWS maintains that it has stated a claim upon which relief can be granted. Lastly, NWS maintains that the arbitrator had jurisdiction over the claims made because the plain language of the Arbitration Clause and the Survival Clause of the contract allows for arbitration of any disputes among the parties.

*Is MPI's challenge untimely?*

NWS maintains that MPI is barred from challenging the arbitrator's award because MPI failed to appear and participate at the arbitration after receiving proper notice. NWS relies on Comprehensive Accounting Corp. v. Rudell,[17] wherein the court held that the defendants had an opportunity to challenge the jurisdiction of the arbitrator, but failed to do so, even though proper notice was given. Therefore, when they challenged the award in Federal Court, it was untimely. In other words, challenges to an arbitrator's authority must be brought prior to an arbitration.

---

[16] Codified as 9 USC § 10.

[17] 760 F.2d 138 (7th Cir. 1985).

MPI relies on <u>FIA Card Services, N. A. v. Weaver</u>[18] and <u>MCI Telecommunications Corp. v. Exalon Industries, Inc.</u>[19] wherein the courts held there is no time limit to challenge an arbitration award. In <u>MCI,</u> the court opined the following that is helpful to the resolution of the challenges made herein:

> [A]s a general matter, section 12, as well as section 2 and the other enforcement provisions of the FAA, do not come into play unless there is a written agreement to arbitrate. Thus, if there is no such agreement, the actions of the arbitrator have no legal validity. It follows that one is not required to mount a collateral challenge to such an ineffectual action, for if the agreement to arbitrate does not exist, there is no obligation to arbitrate– and a noncontracting person's failure to appear at the arbitration hearing does not create such an obligation.
> A party that contends that it is not bound by an agreement to arbitrate can therefore simply abstain from participation in the proceedings, and raise the in existence of a written contractual agreement to arbitrate as a defense to a proceeding seeking confirmation of the arbitration award, without the limitations contained in section 12[20], which are only applicable to those bound by a written agreement to arbitrate. Of course, if a court later determines that an arbitration agreement was in effect, and that the non-appearing party was bound by its conditions, the FAA would then fully come into operation, including the time limitations of section 12.[21]

Based on this sound reasoning, we find that MPI has a right to challenge an award in this court on the basis that no written agreement to arbitrate existed between the parties.

---

[18] 62 So.3d 709 (La. 2011).

[19] 138 F.3d 426, 427 (1st Cir. 1998).

[20] Section 12 of the FAA provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12.

[21] <u>MCI Telecommunications Corp.</u>, 138 F.3d at 430. See also <u>FIA Card Services, N.A. v. Weaver,</u> 62 So.3d 709 (La. 3/15/11)( party does not waive his affirmative defense that there was no valid arbitration agreement by failing to timely file action to vacate the award).

*Does a valid arbitration agreement exist as to the subject matter of this lawsuit?*

NWS maintains that even if MPI can challenge the arbitrator's authority at this stage of the proceeding, the motion to dismiss should be denied because the contract between NWS and MPI remained in existence and is binding upon the parties even after the contract's initial term, and the plain language of the arbitration clause and survival clause of the contract allows the transactions to be arbitrated. First, it is undisputed that the contract contained a valid arbitration provision in paragraph 7. Furthermore, paragraph 11 clearly and plainly states that paragraph 7 would survive the termination or dissolution of the contract. In other words, even if the contract itself was terminated, but the parties continued to have a business relationship, any disputes, including payment for NWS products, are within the scope of the arbitration clause.

## CONCLUSION

Based on the foregoing, the instant motion to dismiss will be denied; the court finds that there is a contract that contains a valid arbitration agreement between the parties, and the arbitration agreement survives the termination of the contract and is binding upon the parties.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 29th day of August, 2013.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE