RECEIVED
IN ALEXANDRIA, LA.

JAN 2 1 2014

TONY R. MOORE, CLERK
_____
           DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| NATIONAL WASTEWATER SYSTEMS, INC. | : | DOCKET NO. 2:13-0527 |
| VS. | : | JUDGE TRIMBLE |
| MCKITTRICK PRECAST, INC. | : | MAGISTRATE JUDGE KAY |

### MEMORANDUM RULING

Before the court is a "Motion to Set Hearing on Application to Confirm Arbitration Award" (R. #14) wherein the mover, National Wastewater Systems, Inc. ("NWS"), moves for the court to set a hearing to on its Application to Confirm Arbitration Award. McKittrick Precast, Inc. ("MPI") opposes the motion.

### FACTUAL ALLEGATIONS/ PROCEDURAL HISTORY

This suit is the result of an arbitration proceeding wherein the arbitrator found in favor of NWS and against MPI in the amount of $269,095.24 with legal interest, costs and attorney's fees. The Award further enjoined MPI from marketing and selling NWS' intellectual property. Even though MPI received proper notice of the proceeding, it failed to answer and/or participate.

After the instant proceeding was filed to confirm the arbitration award, MPI filed a motion to dismiss pursuant to Rule 12(b)(6).[1] The parties briefed the issues set forth in the motion, and the undersigned subsequently denied the motion concluding that based on the survival and arbitration clause in the Manufacturing Contract, the contract between NWS and MPI remained in existence and

---

[1] R. #5.

the arbitration clause was binding upon the parties after the contract's initial term. We further found that the dispute over payment was within the scope of the arbitration clause.

NWS now seeks a hearing to confirm its arbitration award. MPI opposes the hearing arguing that (1) the entire arbitration award is a nullity including the injunction award, (2) alternatively, the injunction should be narrowly tailored, and (3) this court has no authority to award attorney fees.

## LAW AND ANALYSIS

NWS maintains that the instant suit is in a posture to be set for hearing to confirm the arbitration award. NWS remarks that MPI's answer admits the following:

(1) plaintiff shipped Solar Air Kits to defendant[2]
(2) defendant failed to pay for a number of Solar Air Kits[3]
(3) Carl McKittrick was "generally aware" of the arbitration proceedings made the subject of this matter[4]
(4) MPI did not answer plaintiff's demand for arbitration and statement of claim[5]
(5) MPI has not paid the arbitration award.[6]

NWS submits evidence of the arbitration proceeding as well as a proposed judgment on its Application to Confirm Arbitration Award; the proposed judgment amends the initial proposed judgment filed with the initial application.

---

[2] R. #12, ¶ 6.

[3] R. #12, ¶¶ 6 and 8.

[4] R. #12, ¶ 8, 9. 11 and 13.

[5] R. #12, ¶ 10.

[6] R. #12, ¶ 18.

*Is the arbitration award a complete nullity?*

MPI maintains that the injunction award is a nullity because it encompasses tank molds; MPI argues that the parties did not agree to arbitrate disputes with respect to tank molds. MPI re-urges and re-asserts the arguments it previously raised in support of its 12(b)(6) motion to dismiss for failure to state a claim. As to the injunction, the Award of Arbitrator is as follows;

> **FURTHER AWARDED** the Respondent, McKittrick Precast Company be prohibited enjoined from constructing and marketing the solar air tanks, part of the subject matter of these proceedings.[7]

MPI refers to NWS's Statement of Claim in the arbitration proceeding which alleges the following:

> 5.
>
> Pursuant to the manufacturing relationship by and between the Claimant and the Respondent Claimant provided the Respondent with four (4) molds which are trade secrets of the Claimant and were to be used by Respondent to manufacture the propriety product of National Wastewater Systems, Inc. being the Solar Air SA TXN500 Gallon Aerobic Treatment Plant.
>
> 6.
>
> The understanding by and between the Claimant and the Respondent was that the molds would only be utilized in connection with a manufacturing relationship by and between the Claimant and the Respondent.
>
> 7.
>
> At the termination of the manufacturing relationship, the molds would be turned in or sold back to Claimant and would not be utilized by Respondent to continue to manufacture tanks and products of Claimant.

MPI argues that the Manufacturing Contract between the parties covers only those products identified on Exhibit B attached to the Contract which is as follows:

> Solar Air Kit; includes Blower & Electrical Panel,
> High Water Alarm, Sprinkler Pump, Pump Switch

---

[7] R. #14-1; Award of Arbitrator.

(Float), Chlorinator, Diffuser Bar.[8]

MPI then argues that the tank molds it acquired were done so outside of the contract and remarks that Exhibit B does not reference the tank molds. MPI further argues that there are no "negative covenants (i.e., covenants not to do)" referenced in the above Statement of Claims in the Manufacturing Contract. In other words, the contract does not state that the molds would only be utilized in connection with a manufacturing relationship by and between the claimant and the respondent. And it does not state that at the termination of the manufacturing relationship, the molds would be turned in or sold back to claimant and would not be utilized by respondent to continue to manufacture tanks and products of claimant. MPI maintains that NWS's claims to enforce the negative covenants do not arise out of the contract. Thus, the parties did not agree to submit such claims to arbitration.

In addition to asserting that our previous ruling on the motion to dismiss is the law of the case,[9] NWS relies on the following clause in the Manufacturing Contract:

> Arbitration. Any and all claims, disputes or disagreements between the parties, must be arbitrated in Lake Charles, in accordance with the expedited Commercial Rules of the American Arbitration Association. The Arbitration may award attorney's fees of the successful party.[10]

NWS argues that this language is broad enough to encompass all disputes, including any

---

[8] MPI remarks in a footnote that the parts listed on Exhibit B comprise tank parts, not the tank molds themselves.

[9] The court ruled that the contract between NWS and MPI was valid and the arbitration clause survived the termination of the contract. We specifically held that "even if the contract itself was terminated, but the parties continued to have a business relationship, any disputes, including payment for NWS products, are within the scope of the arbitration clause." Memorandum Ruling dated August 29, 2013, p. 7. R. #10.

[10] Exhibit A of NWS' Application, p. 2, ¶ 7.

dispute with respect to the tank molds, and/or the clause does not limit the scope of the disputes between MPI and NWS. MPI argues that because the "tank molds" are not mentioned in the Manufacturing Contract, the arbitrator's injunction award is a nullity because the parties did not agree to submit these claims to arbitration. NWS cites Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.,[11] which held that broad arbitration clauses are not limited to claims that literally "arise under the contract," but rather embrace all disputes between the parties which "touch," or have a significant relationship to the contract.

The court finds that the arbitration clause is broad and does not limit claims to those that literally arise under the contract. Thus, the dispute over the tank molds as well as the payment for NWS' products are within the scope of the arbitration clause.

*Compliance with Federal Rule of Civil Procedure 65*

Alternatively, MPI maintains that the injunction award does not comply with Federal Rule of Civil Procedure 65(d) because it does not state the reasons why it was issued, state its terms specifically, and does not describe the acts restrained in reasonable detail. MPI asserts that it purchased the tank molds without restrictions.

NWS maintains that MPI waived its opportunity to challenge the injunction award because it failed to participate in the arbitration process. NWS further maintains that the awards does comply with the Federal Rule of Civil Procedure 65(d).[12] NWS argues that MPI knows exactly what conduct from which it is enjoined from engaging– MPI is prevented from constructing the tanks at all, for

---

[11] 139 F.3d 1061, 1065, 1067-68 (5th Cir. 1998).

[12] Islander East Rental Program v. Barfield, 145 F.3d 359 (5th Cir. 1998), quoting Meyer v. Brown & Root Constr. Co., 661 F.2d 369, 373 (5th Cir. 1981).

any reason. Furthermore, NWS argues that the injunction award's "constructing and marketing" language is not vague because it is consistent with prior injunction awards which have been found to satisfy Rule 65(d).

MPI also complains that the injunction award does not provide a reason for an injunction.[13] NWS relies on Brabham v. A.G. Edwards & Sons Inc.,[14] Alternatively, NWS suggests that this court state in its judgment confirming the arbitration award that the arbitrator's injunction award is well-founded. The court agrees with MPI that the arbitrator's injunction award fails to meet the requirements of Rule 65(d) in that it does not state the reasons why it is issued;[15] otherwise, the award sufficiently describes the type of conduct it is attempting to enjoin. "An injunction must simply be framed so that those enjoined will know what conduct the court has prohibited."[16] However, the court would be amenable to reforming the injunction to cure the deficiency as opposed to nullifying the award in its entirety.

*Attorney fees*

The arbitrator's award provides that NWS is awarded legal interest, the cost of the proceedings and reasonable attorney fees. MPI maintains that there is no authority under the FAA

---

[13] Fed. Rule Civ. P. 65 (d) provides that orders granting an injunction must:
(1) state the reasons why it issued;
(2) state its terms specifically; and
(3) describe in reasonable detail– and not by referring to the complaint or other document– the act or acts restrained or required.

[14] 376 F.3d 377, 385 (5th Cir. 2004)(arbitrators need not give reasons for their awards).

[15] "Although the requirements of Rule 65(d) are mandatory, elaborate detail is unnecessary; . . ."Meyer v. Brown & Root Constr. Co., 61 F.2d 369, 373 (5th Cir. 1981).

[16] Id.

for this court to set an attorney fee award, particularly insofar as NWS is seeking costs of proceedings subsequent to the arbitration (including this instant proceeding). NWS maintains that it is entitled to an award of attorney fees by statute and by contract. NWS relies on Louisiana Revised Statute 9:2781 which allows for attorney fees on open accounts and on the contract which expressly allows the arbitrator to award attorney fees to the successful party.[17] We find no merit to MPI's argument that attorney fees are not allowed.

## CONCLUSION

Based on the foregoing, the motion to set a hearing will be granted in favor of National Wastewater Systems, Inc.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 21st day of January, 2014.

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[17] R. #14-1, p. 84 ¶ 7.